IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| FRANCISCO DELAROSA and SARAH LINDSEY YEAGER, <br><br> Plaintiffs, <br><br> vs. <br><br> LIBERTY MUTUAL INS. CO., <br><br> Defendant. | Civil No. 23-00267 MWJS-RT <br><br> ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## **INTRODUCTION**

This is an insurance dispute arising out of a May 2021 car accident in which Plaintiffs, Francisco DelaRosa and Sarah Lindsey Yeager, suffered severe injuries. The car that collided with Plaintiffs was a rental. But it was not owned by a rental company. Instead, it had been rented through Turo Inc., a peer-to-peer car sharing platform that connects the individual owners of vehicles with other individuals seeking to rent them.

Four insurance policies were in play: the vehicle owner's personal policy, the rental driver's personal policy, and two policies that had been issued to Turo by

Liberty Surplus Insurance Corporation (Liberty Mutual).[1]  The owner's and driver's personal insurance companies denied coverage, and Plaintiffs do not challenge those decisions here.  Instead, Plaintiffs have brought this declaratory judgment action against Liberty Mutual.  In Plaintiffs' view, the more favorable of Liberty Mutual's policies should apply to the accident.  And while the policy does not apply on its own terms, Plaintiffs contend that it should be rewritten so that it does.

The parties have stipulated to the relevant facts and now both move for summary judgment, each contending that they are entitled to prevail as a matter of law.  Because Plaintiffs have not carried their burden of showing that Hawaiʻi law or public policy permits the Court to rewrite the more favorable insurance policy so that it covers the accident, the Court DENIES Plaintiffs' motion for summary judgment.  And because Plaintiffs have offered no other ground for relief, the Court GRANTS Defendant's motion for summary judgment.

//

//

//

---

[1]     Liberty Mutual says that it is incorrectly named in this lawsuit as Liberty Mutual Insurance Company, but its actual name is Liberty Surplus Insurance Corporation.  Plaintiffs do not dispute that representation.

**BACKGROUND**

A.   **Turo Insurance Coverage Gap**

In Hawaiʻi, vehicle owners are required by statute to provide the state minimum insurance coverage for their automobiles, including for other drivers of their vehicles.  *See* Hawaiʻi Revised Statutes (HRS) § 431:10C-104(b) (1997); HRS § 431:10C-301(a)(2) (1998).  To fulfill that duty, vehicle owners generally obtain a personal automobile insurance policy for their cars.  Even with a personal policy, however, certain uses of a vehicle may be excluded.  For example, sometime before the events of this case, insurance companies began to exclude peer-to-peer car sharing platforms (like Turo) from the scope of their coverage.  As a result, a gap in coverage could occur when an individual rented out their car.

In response, the Hawaiʻi legislature enacted Act 56, which provides insurance requirements for peer-to-peer car sharing.  *See* 2022 Haw. Sess. Laws Act 56, §§ 1-5 at 101-06.  At the time of the accident here, however, that law had not yet been enacted.  This case therefore presents a coverage issue emerging from a discrete and limited time period:  after insurance companies began to exclude peer-to-peer car sharing platforms from coverage, but before Act 56 took effect.

In that period, Turo sometimes plugged the gap in coverage by obtaining insurance policies that it would then offer to the renter and owner of the vehicle. For example, Turo would sometimes obtain a policy from an insurance company

3

that covered both the renter and the owner.  And Turo would sometimes also obtain a policy that provided coverage just to the owner.  Turo would then make those policies available to the renter and owner for a fee.  Here, Turo did just that.

**B.    The Car Accident and Ensuing Insurance Dispute**

The parties have stipulated to the material facts.  They agree that the accident occurred on May 15, 2021.  ECF No. 17, at PageID.85 (Pls.' Concise Statement of Facts (CSF) ¶ 1); *see* ECF No. 22, at PageID.264-65 (Def.'s CSF) (facts undisputed).  Plaintiff Francisco DelaRosa drove one car, with Plaintiff Sarah Lindsey Yeager in the passenger seat.  ECF No. 17, at PageID.85 (¶ 1). Rubin Minnekhanov drove the other vehicle, which was a Turo rental car owned by Gabriel Rojo.  *Id.* (¶¶ 1, 3).  The car Minnekhanov was driving collided with Plaintiffs' car head-on, resulting in severe bodily injuries to Plaintiffs.  *Id.* (¶ 1).

As explained above, an owner's personal automobile insurance would typically cover liability for all permissive users of their car.  And Rojo—the vehicle owner, or the "Host" in Turo's terminology—carried personal automobile insurance with the United Services Automobile Association (USAA).  *Id.* at PageID.87 (¶ 15).  Rojo knew, however, that his personal automobile insurance would not cover his vehicle while it was being rented through Turo.  ECF No. 29, at PageID.300  To cover that gap, Rojo had purchased a special insurance policy through Turo, which Plaintiffs label the "Host Policy" (Policy No. ASE-631-

4

510574-010).  *Id.*; ECF No. 17, at PageID.86 (¶ 7).  Meanwhile, Minnekhanov, the car driver and Turo "Guest," separately purchased from Turo the state minimum liability insurance for his trip.  ECF No. 17, at PageID.87 (¶ 16).  Plaintiffs label that the "Guest Policy" (Policy No. ASE-631-510574-050).  *Id.* (¶ 17).

Turo, in turn, had obtained both policies from Liberty Mutual.  *Id.*; *id.* at PageID.86 (¶ 7).  Both policies incorporate a "Coverage Form" (technically known as the "ISO Business Auto Coverage Form CA 00 01 03 10"), which generally says that Liberty Mutual will pay all sums that an "insured" legally must pay as a result of an accident involving a covered vehicle.  ECF No. 17-1, at PageID.92 (Stip. of Facts ¶ 5).  The Host and Guest policies separately lay out endorsements, or modifications to their terms, which define who counts as an "insured" and outline their coverage limits.  *Id.* at PageID.92-102.

The policies differ in these two key respects.  First, the Host Policy expressly covers the Host, among other insureds, but it does not cover any Guest.  ECF No. 17-4, at PageID.172.  The Guest Policy, on the other hand, covers both the Guest *and* Host, among other insureds.  ECF No. 17-3, at PageID.135.  For the purposes of this lawsuit, the most consequential distinction between the two policies is their respective coverage limits:  while the Host Policy covers the greater of (1) the state minimum or (2) $750,000, ECF No. 17, at PageID.87 (¶ 12), the Guest Policy offers only the state minimum liability insurance—which, in

5

Hawaiʻi, is $20,000 per person for bodily injury, *id.* at PageID.88 (¶¶ 21-22).[2]  In

other words, the Host Policy is the more favorable of the two policies.

Following the collision, car owner Rojo's personal automobile insurer,

USAA, denied coverage for the collision, as expected.  *Id.* at PageID.87 (¶ 15).

And so did driver Minnekhanov's personal automobile insurance carrier, GEICO.

*Id.* at PageID.89 (¶ 24).

As settlement for Plaintiffs' injuries, Liberty Mutual tendered its policy limit

of $20,000 per person for bodily injury under the Guest Policy.  *Id.* (¶ 25).

Plaintiffs rejected the offer.  *Id.* (¶ 26).  They claimed, instead, that Liberty Mutual

owed the $750,000 of coverage available under the Host Policy.  *Id.*  Liberty

Mutual refused to provide the higher coverage.  *Id.*

Unable to reach a resolution, on April 25, 2023, Plaintiffs filed a complaint

in the Circuit Court of the First Circuit, State of Hawaiʻi, seeking a declaratory

judgment that they are entitled to the higher $750,000 coverage amount.  *Id.* (¶ 27).

Liberty Mutual then removed the case to this Court on diversity of citizenship

grounds.  *Id.* (¶ 28).

---

[2]     Both policies include a clause specifying that their coverage is "excess" over
any other coverage carried by the named insured parties.  ECF No. 17, at
PageID.87 (¶ 14); *id.* at PageID.88 (¶ 23).

### C.    Cross-Motions for Summary Judgment

Both parties now move for summary judgment based on the stipulated facts. In their motion, Plaintiffs assert that because Hawaiʻi law and public policy places the responsibility for obtaining automobile insurance on the car owner, the Turo Host Policy must be rewritten to cover the Guest, and that policy—not the Guest Policy—must operate as the primary insurance coverage for their accident, entitling them to access $750,000 of coverage.  In its cross-motion, Liberty Mutual contends that the policies' plain terms should control, under which only the Guest Policy covers the driver, leaving Plaintiffs with $20,000 each.

The Court held a hearing on the cross-motions for summary judgment on August 15, 2024.  ECF No. 34.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where a movant shows there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Each party bears the burden of production and the ultimate burden of persuasion on their own motion.  *See Nissan Fire & Marine Ins. Co. v. Fritz. Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  Because the parties have stipulated to the material facts here, this case presents purely a legal issue.

7

## DISCUSSION

This is a diversity action, and so the Court looks to Hawaiʻi state law on the substantive issues. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001). Accordingly, the decisions of the Hawaiʻi Supreme Court are binding. *See Ariz. Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). And where there is no case on point, the Court must predict how the state supreme court would decide the issue, considering as guidance other Hawaiʻi court decisions, as well as decisions from other jurisdictions, statutes, treatises, and restatements.[3] *Id.*

Under Hawaiʻi law, insurance policies are "subject to the general rules of contract construction"; that is, where unambiguous, the plain language and literal meaning of the terms control. *Dairy Rd. Partners v. Island Ins. Co.*, 92 Hawaiʻi 398, 411, 992 P.2d 93, 106 (2000) (quoting *First Ins. Co. of Hawaiʻi, Inc. v. State*, 66 Haw. 413, 423-24, 665 P.2d 648, 655 (1983)). In addition, insurers "have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation," with the caveat that they may only do so to the extent permitted by state law. *Id.* (brackets omitted) (quoting *First Ins.*, 66 Haw. at

---

[3]   No party has requested certification to the Hawaiʻi Supreme Court, and given that Act 56 has limited the practical effect of the legal issues presented here to a discrete time period, *see supra* p. 3, the Court declines to certify the question *nostra sponte*.

8

423, 665 P.2d at 655).  A clause that violates a state statute or public policy is invalid.  *Id.*

The parties agree that the Host Policy at issue in this case unambiguously excludes the Guest from coverage.  Plaintiffs nonetheless seek to invalidate that exclusion as a matter of Hawaiʻi law or public policy.  Accordingly, Plaintiffs bear the burden of showing the statutory or public policy grounds for rewriting the contract.  If they are unable to do so, the plain meaning of the policy controls, and Plaintiffs may recover only under the Guest Policy.

1.  One way in which the Plaintiffs might have carried their burden would have been to show that Hawaiʻi statutory law requires that Liberty Mutual's Host Policy be rewritten.  Plaintiffs do not press this point, however—they do not identify language in any state statute that would, of its own force, authorize the Court to grant their requested relief.  And the Court sees none.

HRS Chapter 431:10C—the most promising state statute for Plaintiffs' position—does not do so.  As noted above, under this statute, the owner of a vehicle is required to provide state minimum coverage for their vehicles, including for other drivers of their vehicles.  *See supra* pp. 2-3.  So, for example, if a rental car company owns its vehicles and rents them out, it has a statutory obligation to ensure that the vehicle is covered up to the state minimum coverage requirements.  *See generally Bowers v. Alamo Rent-A-Car, Inc.*, 88 Hawaiʻi 274, 965 P.2d 1274

9

(1998). Or if an individual owns a vehicle, then they have the statutory obligation to obtain this coverage.

In this case, Liberty Mutual does not own the vehicle at issue, and it therefore has no direct obligations under the state statute. Nor did Liberty Mutual enter into any agreement with the owner of the vehicle. Instead, Liberty Mutual issued the Host Policy and Guest Policy to Turo. It is, therefore, unclear why Liberty Mutual would have any indirect obligations under the statute either. *See Talana v. Liberty Surplus Ins. Corp.*, Civil No. 21-00426, 2023 WL 2632219, at *4-6 (D. Haw. Mar. 24, 2023) (concluding that "state laws concerning policies issued to car owners ha[d] no bearing" on an insurance policy issued to Turo "because the Liberty Mutual Policy was not issued to a car owner").

Plaintiffs offer no answer. They propose no interpretation of HRS Chapter 431:10C (as it existed at the time of the accident) that would allow its terms to extend to insurance companies that have no ownership interest in a vehicle. Nor do they propose any interpretation of the statute that would authorize the Court to rewrite an insurance policy issued by a nonowner. If there is a basis in Hawaiʻi law for that relief, it must exist elsewhere.[4]

---

[4] To the extent Plaintiffs separately rely on Act 56 (the law setting coverage requirements specific to peer-to-peer car-sharing companies), that reliance is misplaced. Act 56 was not in effect at the time of Plaintiffs' collision, and it does not apply retroactively; nor does it otherwise support Plaintiffs' contention that a

2.  Plaintiffs assert that it does exist elsewhere:  in Hawaiʻi public policy.

They argue that HRS Chapter 431:10C, though not applicable on its precise terms,

nonetheless reflects a broader policy that should reach the circumstances of this

case.  And in support of their position, Plaintiffs rely on *Bowers v. Alamo Rent-A-

Car, Inc.*, 88 Hawaiʻi 274, 965 P.2d 1274.  There, the Hawaiʻi Supreme Court

recognized that "the dominant public policy of HRS Chapter 431:10C is that

vehicle owners are primarily responsible for providing minimum coverage for their

owned vehicles."  *Id.* at 281, 965 P.2d at 1281.  Plaintiffs posit that this "dominant

public policy" requires the Court to rewrite the Turo Host Policy so that it, rather

than the Guest Policy, covers the driver's collision.  But Plaintiffs have not shown

that *Bowers* requires—or even allows—that result.

In *Bowers*, the Hawaiʻi Supreme Court rejected a traditional rental car

company's attempt to contract away the primary responsibility for its renters'

insurance coverage.  *Id.*  The rental company, Alamo Rent-a-car, Inc., was both car

owner and insurer; in other words, it rented its cars and sold insurance plans to

customers.  *Id.* at 275, 965 P.2d at 1275.  The collision policy it sold to drivers had

an "escape clause," which stated that the policy would cover the state minimum

---

Host Policy crafted before Act 56 must now be rewritten to cover the Guest.  *See Talana*, 2023 WL 2632219, at *5 (concluding Act 56 did not support rewriting the Turo policy at issue in that case because it was not in effect at the time of the plaintiff's collision, and it "contains no indication" that differential coverage limits are contrary to public policy).

11

liability insurance only if no other insurance was available to the driver. *Id.* And so when the plaintiff customer suffered a collision while driving an Alamo rental, Alamo argued that solely the plaintiff's personal automobile insurance, and not Alamo's own policy, covered his collision. *Id.*

The Hawaiʻi Supreme Court acknowledged that, regardless of the result it reached, the vehicle would have had the state minimum insurance coverage for that collision. *Id.* at 278, 965 P.2d at 1278. But that fact did not, in itself, satisfy Hawaiʻi law. *Id.* Under HRS Chapter 431:10C, it is the *owner*, not the driver, of a car that is primarily responsible for providing the required coverage. *Id.* at 279, 965 P.2d at 1279. Rather than meet that obligation itself, Alamo had effectively sought to acquire the primary coverage for its vehicles through its customers' personal automobile policies. *Id.* at 277-78, 965 P.2d at 1277-78. The court found that contractual shift of Alamo's obligation to be against public policy. *Id.* at 279, 965 P.2d at 1279. Accordingly, it voided the escape clause and held Alamo liable for the primary coverage for the plaintiff's collision. *Id.* at 281, 965 P.2d at 1281.

Plaintiffs contend that *Bowers* requires this Court to similarly void the Host Policy's endorsement that excludes the Guest as an insured. Plaintiffs' argument, however, suffers from a fatal flaw. Although Plaintiffs colloquially refer to one Turo policy as the "Host Policy" and the other as the "Guest Policy," the parties acknowledge that the plain terms of *both* policies cover the Host as an insured. Put

12

another way, the policy that Plaintiffs call the "Guest Policy" could just as fairly be called a "Host" policy—or, more accurately, a "Guest-and-Host" policy.

That makes this case fundamentally different from *Bowers*, in which Alamo—there the owner of the vehicles—sought to shift liability to insurance policies that were personal to its customers. As noted, the Hawaiʻi Supreme Court rejected Alamo's approach because it is the vehicle owner who must provide minimum coverage for their vehicle. That meant, in *Bowers*, that Alamo had to provide the coverage itself and could not contractually shift that legal obligation to anyone else. What it means in this case, however, is a different matter. Here, allowing the Guest Policy to apply on its terms would not amount to allowing the vehicle owner to shift his legal obligation to anyone else, as happened in *Bowers*. That is because the Guest Policy covers both the driver and the owner. And there is, therefore, no reason under *Bowers* why the Court should rewrite the Host Policy (which only covers the Host) to apply to the accident in this case, when the Guest Policy—or, again, what is really the Guest-and-Host Policy—is just as capable of satisfying the owner's obligation to supply the required minimum coverage without the need for any rewriting at all.

Plaintiffs concede that the Guest Policy covers the Host, but they dispute the significance of that fact. In their view, to comply with state insurance law, the owner's policy must cover not just the vehicle owner, but rather the vehicle itself.

13

That may be a fair interpretation of state public policy.  But even if it were, it would not advance Plaintiffs' position.  Plaintiffs point to no distinction between the two policies that suggests that the Host Policy covers the vehicle, while the Guest Policy does not.[5]  When the policy that by its terms applies is as good a fit as the policy Plaintiffs would have the Court rewrite, the Court cannot claim authority to rewrite the preferred policy.

That is especially so because there is another insurance policy here that covers the vehicle:  the personal automobile insurance policy that Rojo purchased through USAA.  Granted, USAA chose to exclude Turo uses from that coverage.  But if the Court truly had the authority to disregard Liberty Mutual's decision to exclude the Guest from its Host Policy, there would be no principled reason—certainly no reason evident in *Bowers*—why it would not be more appropriate to rewrite the USAA policy instead.

Plaintiffs answer that Liberty Mutual's Host Policy must be rewritten under *Bowers* because the vehicle owner, Rojo, purchased that policy from Turo himself, whereas the Guest Policy was purchased by the driver.  But once again, this argument assumes that Liberty Mutual is the only insurance company involved in this case.  Plaintiffs have not adequately explained why, if Hawaiʻi public policy

---

[5]     To the extent Plaintiffs rely on the "covered 'auto'" language in the Host policy, the parties' stipulation of facts indicates that the same language appears in the Guest Policy.  *See* ECF No. 17, at PageID.88 (¶ 20).

requires rewriting insurance policies so that vehicles are covered by policies the vehicle owner themselves purchase, it would not be more appropriate to rewrite the policy that Rojo himself purchased from USAA. And even if Liberty Mutual were the only insurance company involved here, Plaintiffs still would not have shown that, under *Bowers*, the fact that Turo charged the Guest an extra fee for the Guest Policy, rather than the Host, should be dispositive. After all, Plaintiffs acknowledge that the Guest Policy was mandatory, and so no trip could have been taken without both the Host and Guest benefitting from its coverage. By virtue of using Turo's services, therefore, the Host automatically obtained the necessary minimum coverage under the Guest Policy. And Plaintiffs point to nothing in *Bowers* that requires a vehicle owner to take a more proactive approach in how they meet their minimum coverage responsibility. Nor have Plaintiffs shown why, under *Bowers*, the Court would be authorized to rewrite a more favorable Host Policy merely because a less favorable (but legally sufficient) Guest Policy had been obtained in an automated or routinized way.[6]

---

[6]      To illustrate this point by way of a (not entirely realistic) hypothetical, consider an automobile dealership that automatically issued a personal insurance policy to each customer who purchased a car. That policy, assuming it met minimum coverage limits, surely would suffice to meet the car owner's state law obligations, even though the owner did not have to make more conscious efforts to obtain the policy (such as by paying a fee specifically in consideration for it).

15

These conclusions draw support from an earlier decision in this District, *Talana v. Liberty Surplus Insurance Corp.*, 2023 WL 2632219, which is not binding, but which is persuasive authority nonetheless.  In that case, the plaintiff had also relied on *Bowers* as public policy grounds for rewriting a Turo insurance policy, but Judge Susan Oki Mollway rejected the argument.  *Id*. at *5.  A single policy covered the car owner, the driver, the car itself, and Turo (much like the Guest Policy here).  *Id*. at *1.  The policy distinguished between limits for each insured party:  the limit for nonowner drivers was $50,000, while the limit for the owner was a significantly higher $1,000,000.  *Id.*  The plaintiff, who had suffered injuries in a collision with a car driven by a Turo Guest, sought a declaratory judgment that as a matter of statutory interpretation or public policy, the higher policy limit of $1,000,000 should cover his injuries.  *Id.* at *1, 3.  Judge Mollway disagreed, and she granted summary judgment in favor of the insurer.  *Id.* at *5-6.  In doing so, she distinguished *Bowers* as addressing the primary nature of a car owner's insurance policy, not "whether an owner's coverage limit should be applied to all others."  *Id.* at *5.

Plaintiffs seek to differentiate *Talana* on the ground that it involved a collision that occurred before insurance companies began to exclude Turo from their customers' personal automobile policies.  ECF No. 16-1, at PageID.80.  And so *Talana*, Plaintiffs suggest, addressed only Liberty Mutual's obligations

16

regarding two competing "excess" insurance limits, where the primary coverage had already been met by the owner's personal automobile insurance. *Id.*

Talana is factually distinct on those grounds, but its reasoning still has force here. By arguing that the Court should rewrite the more favorable Host Policy instead of simply applying the Guest Policy, Plaintiffs effectively argue that car insurance policies cannot treat an owner more favorably than a driver. As *Talana* persuasively explained, to accept that argument would be to undermine the ability of an owner to obtain excess coverage for themselves. Nothing in Hawaiʻi law— and certainly nothing cited by Plaintiffs—mandates that result. So long as an owner has met their responsibility to provide minimum coverage for their vehicle, they are free to obtain additional broader coverage that is limited to liability they face themselves. *See Fairmont Specialty v. Estate of Hoohuli*, 442 F. App'x 323, 326 (9th Cir. 2011) ("While it may be impermissible for a rental car company to shift primary responsibility to the driver's insurance company in *all* cases, the insurer is within its rights to *limit* who qualifies as an 'insured' under its policy.") (citing *Bowers*, 88 Hawaiʻi at 279, 965 P.2d at 1279)).

For these reasons, the Court concludes that Plaintiffs have not met their burden to show any state law or public policy reason for rewriting the Turo policies so that the more favorable of the two—both of which cover the Host—also covers the Guest.

3.  As a final argument in support of rewriting the insurance policies, Plaintiffs make a general appeal to equitable principles.  But Plaintiffs point to no specific legal doctrine that would backstop this argument, and in any case, it lacks an adequate evidentiary basis in the summary judgment record.

Plaintiffs urge that equity requires rewriting the Host Policy to cover the Guest, because a Turo Host would not purchase the Host Policy if they did not believe they needed to do so to meet the state law requirements.  In support, Plaintiffs submit a declaration from Rojo indicating that he purchased the Host Policy for that very purpose.  ECF No. 29, at PageID.299-300.  In addition, they submit screenshots of the Turo website, *id.* at PageID.301-09, which they allege show that the Host Policy is marketed and sold as a way for a vehicle owner to meet their minimum coverage requirements, *id.* at PageID.293-94.

Along these lines, Plaintiffs further posit that it would be against public policy to allow Liberty Mutual—who, they say, must have known that Turo would sell, and Hosts would purchase, the Host Policy on that basis—to now dodge liability.  Plaintiffs' argument, however, rests on speculation.  Even assuming Plaintiffs' submissions show that Turo was aware of that misunderstanding—and, taking it a step further, assuming that Turo intentionally marketed and sold the Host Policy based upon that misunderstanding—Plaintiffs have produced no

18

evidence showing that Liberty Mutual did so.  And Liberty Mutual, not Turo, is the defendant in this case.

Plaintiffs rejoin that Liberty Mutual is a sophisticated market participant and surely would have known that car owners would purchase the Host Policy to meet their state minimum coverage requirements.  But Plaintiffs have offered no evidentiary basis to conclude that Liberty Mutual would have known these things either generally or in Rojo's case in particular.  First, they have produced no evidence that Liberty Mutual knew (or should have known) that Rojo's personal automobile insurance did not cover his car while it was rented on Turo—or that Liberty Mutual knew, in this time period, that insurance companies had begun to exclude Turo uses.  Nothing in the parties' stipulated facts, nor any declaration or other evidence, supplies that evidentiary grounding.  Furthermore, Rojo could have purchased a separate business insurance policy from his personal automobile insurer, and Plaintiffs have produced no evidence showing that Liberty Mutual knew (or should have known) that he did not do so.  Nor have Plaintiffs supplied any evidentiary basis from which the Court could infer that Liberty Mutual must have generally known that vehicle owners would only obtain its Host Policy if they

had not separately obtained business insurance policies.  The Host Policy is, after

all, explicitly designated as "excess" coverage.  *See supra* p. 6 note 2.[7]

*    *    *

To succeed on their motion, Plaintiffs must show that Hawaiʻi state law or

public policy requires this Court to rewrite the Host Policy to also cover the Guest.

They have not met that burden.  And they offer no other legal theory or factual

basis for liability, equitable or otherwise.  The Court therefore cannot conclude that

Plaintiffs are entitled to the higher $750,000 insurance coverage limit contained in

the Host Policy.  Accordingly, Plaintiffs are not entitled to a declaratory judgment

to that effect.

The final question, then, is whether Liberty Mutual is entitled to judgment as

a matter of law.  In this case, the material facts are uncontested.  The driver was

covered as an insured under the Guest Policy, but not the Host Policy.  The sole

proffered evidence shows that the Guest Policy provides the minimum state

---

[7]    Liberty Mutual, for its part, contends that there would be no basis to rewrite the Host Policy even if the evidence conclusively showed that Liberty Mutual had misleadingly marketed the policy.  As Liberty Mutual sees it, because it issued the policies directly to Turo, and because Turo has no state law responsibility to insure rental vehicles (which it does not own), Liberty Mutual cannot be held responsible for Turo customers' state law obligations, regardless of how Liberty Mutual marketed its policies to those customers.  While these arguments appear to go too far, the Court need not resolve their merits, because as noted, Plaintiffs have not supplied an evidentiary basis from which to conclude that Liberty Mutual engaged in any misconduct.

20

liability coverage for Rojo, since the plain terms of the Guest Policy also expressly cover the Host.  And as noted, Plaintiffs have offered no viable legal theory or factual basis on which they could rewrite the policies to secure judgment. Accordingly, Liberty Mutual is entitled to judgment as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, ECF No. 16, is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 21, is GRANTED.

IT IS SO ORDERED.

DATED:  September 18, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 23-00267 MWJS-RT; *Francisco Delarosa and Sarah Lindsey Yeager v. Liberty Mutual Ins. Co.*; ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT